The KENDAL CORPORATION, formerly known as Kendal–Crosslands and Margaret Singer and Joseph Singer, Plaintiffs,

v.

INTER–COUNTY HOSPITALIZATION PLAN, INC., and Inter–County Health Plan, Inc., Defendants.

Civ. A. No. 90–3181.

United States District Court, E.D. Pennsylvania.

Aug. 23, 1991.

---

Elizabeth A. Read, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for plaintiffs.

James A. Young, Cynthia Gough McKeever, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendants.

1. ERISA defines a "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ... or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This is an action brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants, Inter–County Hospitalization Plan, Inc. and Inter–County Health Plan, Inc. (jointly referred to as "Inter–County"), seek partial summary judgment against plaintiff Kendal Corporation ("Kendal") on the grounds that Kendal lacks standing to sue under ERISA and against plaintiffs Margaret and Joseph Singer on the grounds that Inter–County is not liable to the Singers under the employee benefit plan ("Plan") for $50,000 paid by Kendal to the Duke University Medical Center for life-saving medical treatment for Mrs. Singer because the Singers are not legally obligated to repay Kendal.

## I. BACKGROUND

Plaintiff Kendal, a nonprofit Pennsylvania corporation, entered into a written Group Comprehensive Major Medical Contract ("Insurance Contract") with defendants Inter–County, also nonprofit Pennsylvania corporations, wherein Inter–County agreed to provide coverage for health and medical benefits to the employees of Kendal. Plaintiff Joseph Singer is employed by Kendal and is a participant[1] under the Plan, the terms of which are dictated by the Insurance Contract. Plaintiff Margaret Singer is the wife of Joseph Singer and is a beneficiary[2] under the Plan.

Margaret Singer was diagnosed with Stage II breast cancer in the Spring of 1989. Because Mrs. Singer was given only a 20% chance of surviving three to five years if treated conventionally, her physician recommended that she undergo a relatively new, but much more efficacious treatment, known as "high-dose chemo-

2. "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

therapy with autologous bone marrow transplant" ("HDC–ABMT").[3] Margaret Singer was accepted into the Duke University Medical Center Bone Marrow Transplant Program ("Duke") which required a $50,000 down payment before performing the HDC–ABMT. The Singers and Kendal requested Inter–County to pay, pursuant to the Plan, the expenses associated with the HDC–ABMT. Inter–County denied the claim without reason in a letter dated August 7, 1989. *See* Complaint, Exhibit C. The plaintiffs then requested Inter–County to reconsider the claim, and Inter–County agreed to take the claim under advisement.

Because of Inter–County's refusal to provide coverage, Margaret Singer's urgent need for the life-saving medical treatment, and Duke's requirement of a $50,000 down payment which the Singers were unable to pay, Kendal advanced $50,000 to Duke so that Margaret Singer's treatment could begin immediately. *See* Complaint, Exhibit D. Inter–County again denied coverage after reconsideration of the claim in a letter dated March 14, 1990 on the purported grounds that HDC–ABMT "is experimental in Margaret Singer's case." *See* Complaint, Exhibit E. Kendal and the Singers filed suit pursuant to ERISA, specifically 29 U.S.C. § 1132(a)(1)(B) and (a)(3), to enforce the terms of the Plan.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir.1980). The court does not resolve ques-

tions of undisputed fact, but simply decides whether there is a genuine issue of fact which must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Ettinger v. Johnson*, 556 F.2d 692 (2d Cir. 1977). The facts must be viewed in the light most favorable to the non-moving party, and reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party. *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982).

In the present case, there is no genuine issue of material fact, and the parties agree that the issues presented in defendant's motion for partial summary judgment can be decided as a matter of law.

## III. DISCUSSION

Under the terms of the Insurance Contract and the Plan, Inter–County is not liable for the costs of Margaret Singer's HDC–ABMT if the procedure is experimental in nature.[4] Whether the HDC–ABMT is experimental in Margaret Singer's case is a question of fact to be resolved by the factfinder at trial.[5] Inter–County requests this court to grant its motion for partial summary judgment alleging that, even if the HDC–ABMT procedure was not experimental in Mrs. Singer's case, Inter–County is not liable for the $50,000 down payment advanced by Kendal on two grounds: (1) Kendal does not have standing to sue pursuant to ERISA, and (2) Inter–County is not liable for any costs incurred if the participant or beneficiary has no legal obli-

**3.** High dose chemotherapy with autologous bone marrow transplant is a procedure whereby "the patient's bone marrow is harvested—or removed—with the patient then able to receive vastly increased doses of chemotherapy and radiation therapy which would have destroyed the bone marrow had the bone marrow not been removed, for of all the body tissue, the marrow is the one most sensitive to and most damaged by chemotherapy. There is a direct relationship between the dosage administered and the response of the patient—the higher the dosage, the greater the response. The marrow is thereafter reinfused and allowed to reengraft and, because it is the patient's own, rejection does not present

a problem." *See Rollo v. Blue Cross/Blue Shield of New Jersey*, No. 90–597, transcript of proceedings at 4–5 (D.N.J. Mar. 22, 1990) (1990 U.S.Dist. LEXIS 5376 at 3). *See also* Complaint at 3 n. 1 (quoting *Rollo* ); Complaint, Exhibit B at 4–5.

**4.** Article VI(C) of the Insurance Contract explains that "[b]enefits are not payable for any treatment or procedure (including medication) which is experimental in nature or application." *See* Complaint, Exhibit A at Article VI(C).

**5.** Although the plaintiffs originally requested a jury trial, the parties have agreed to proceed non-jury.

gation to pay such costs pursuant to the Plan.

### a. *Kendal's Standing to Sue*

■ Because Kendal maintains the Plan by itself, it is the sponsor of the Plan pursuant to 29 U.S.C. § 1002(16)(B).[6] Moreover, because the Plan does not specifically designate an administrator and because Kendal is the Plan sponsor, Kendal is also the administrator of the Plan pursuant to 29 U.S.C. § 1002(16)(A)(ii).[7] Therefore, as Plan sponsor and administrator, Kendal is a fiduciary pursuant to ERISA which provides that "a person is a fiduciary with respect to a plan to the extent ... he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii). Consequently, Kendal has standing to bring this action against Inter–County pursuant to section 1132(a)(3) of ERISA which provides:

A civil action may be brought—

. . . .

(3) by a ... fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

Inter–County argues that Kendal cannot recover the $50,000 advanced to Duke because Kendal would be receiving a benefit under the Plan that only a participant or beneficiary can receive.[8] This argument overlooks the court's broad discretion to grant a fiduciary "appropriate equitable relief." 29 U.S.C. § 1132(a)(3).

■ In the present case, however, this court need not determine whether it could require Inter–County, pursuant to 29 U.S.C. § 1132(a)(3), to pay Kendal the $50,-000. Instead, this court concludes that, if it is determined that Inter–County is liable under the Plan for Margaret Singer's HDC–ABMT (i.e. that the HDC–ABMT was not experimental in Mrs. Singer's case), the $50,000 shall be included in the *Singer's* claim for benefits under the Plan. If they prevail at trial, the Singers will be responsible for reimbursing Kendal its $50,000.[9]

### b. *The Existence of a Legal Obligation*

■ Not only does Inter–County attempt to escape liability by denying reimbursement to Kendal for the $50,000 that it advanced to Duke, Inter–County also tries to evade liability to the Singers for the $50,000 by relying on language in the Insurance Contract which provides that "charges for any services with respect to which there is no legal obligation to pay" will "in no event be considered covered medical expenses." *See* Complaint, Exhibit A at Article VI(A)(15). Inter–County contends that it is not liable to the Singers for the $50,000 already paid to Duke by Kendal because the Singers have no legal obligation to repay Kendal that money. Although the Singers are not legally obligated to reimburse Kendal if Inter–County is not found liable for Mrs. Singer's HDC–ABMT treatment, the Singers are legally obligated to reimburse Kendal if Inter–County is found liable. The Singers admit that "if the plaintiffs prevail, Kendal will be reimbursed for the $50,000 it advanced to Duke on Mrs. Singer's behalf." *See* Memorandum of Plaintiffs in Opposition to Defendants' Motion for Partial Summary

---

**6.** Section 1002(16)(B) provides that "[t]he term 'plan sponsor' means ... the employer in the case of an employee benefit plan established or maintained by a single employer." 29 U.S.C. § 1002(16)(B).

**7.** Section 1002(16)(A)(ii) provides that "[t]he term 'administrator' means ... [,]if an administrator is not so designated, the plan sponsor." 29 U.S.C. § 1002(16)(A)(ii).

**8.** Defendants base this argument on section 1132(a)(1)(B) which permits only a participant

or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

**9.** The Singers admit that "if the plaintiffs prevail, Kendal will be reimbursed for the $50,000 it advanced to Duke on Mrs. Singer's behalf." *See* Memorandum of Plaintiffs in Opposition to Defendants' Motion for Partial Summary Judgment at 5.

Judgment at 5. Because the Singers have established through their own admission that they are legally obligated to reimburse Kendal the $50,000 if they prevail in this lawsuit, this action shall proceed to trial on the Singer's entire claim for benefits under the Plan for Mrs. Singer's HDC–ABMT treatment.

 Moreover, any other result would be contrary to one of the important goals of ERISA "to make certain that participants and beneficiaries not be deprived of the full value of their plan benefits." *Warren v. Society National Bank*, 905 F.2d 975, 982 (6th Cir.1990). The full value of a participant's or beneficiary's plan benefits on a per-claim basis must be determined at the time that the claim is submitted for payment and is the amount that would have been paid on the claim had the claim not been erroneously denied. If this court determines that Inter–County is liable under the Plan for the Singers' claim for Mrs. Singer's HDC–ABMT treatment, the Singers must be placed in the same position in which they would have been had Inter–County paid the claim up-front. To permit otherwise would be to unjustly enrich Inter–County to the detriment of the Singers. The Singers cannot be denied the benefits that they would have received but for a denial of coverage that is later determined to be erroneous and a breach of the Plan. To exclude from the Singers' claim the $50,000 already paid to Duke would be to reward Inter–County for breaching the Plan and punish Kendal for reaching into its pocket for a needy employee.

 Furthermore, granting defendants' motion for partial summary judgment would be contrary to pubic policy because it would (1) discourage employers and other third parties from benevolently providing financial assistance to individuals in need of potentially life-saving medical treatment [10] and (2) encourage insurance companies to deny coverage for any potentially life-saving medical treatment that is arguably experimental in the hopes that the insured would locate a third party willing to pay for at least part of the treatment.[11] Such a result would be unconscionable.

## IV. CONCLUSION

ERISA and public policy mandate that defendants' motion for partial summary judgment be denied. Kendal has standing to enforce the terms of the Plan, and Inter–County shall not be permitted to deny the Singers' coverage of the $50,000 that Kendal advanced to Duke on the basis that the Singers have no legal obligation to repay Kendal. Consequently, this action shall proceed to trial with Kendal as a party and on the Singers' entire claim for benefits under the Plan for Mrs. Singer's HDC–ABMT treatment.

10. If the Singers had not been successful in locating a benevolent third party, they may have been forced to seek a temporary restraining order ("TRO") enjoining Inter–County from denying coverage for Mrs. Singer's HDC–ABMT. By coming forward with the required down payment, Kendal alleviated the necessity for an emergency TRO and, thus conserved judicial resources.

In another case, involving an insurance company denying coverage for HDC–ABMT treatment on a patient with breast cancer, the plaintiff sought injunctive relief, and the court after a two-day hearing enjoined the insurance company from denying coverage. *White v. Caterpillar, Inc.*, 765 F.Supp. 1418 (W.D.Mo.1991).

11. Granting defendants' motion would also discourage insurance companies from paying claims up-front for potentially life-saving medical treatment upon the condition that the insurance company would be reimbursed if it is later determined that the treatment is experimental and, thus that the insurance company is not liable. In *Rollo v. Blue Cross/Blue Shield of New Jersey*, No. 90–597 (D.N.J. Mar. 22, 1990) (1990 U.S.Dist. LEXIS 5376), a case involving an insurance company denying coverage for HDC–ABMT treatment for a child with a relapsed Wilms' tumor, the insurance company paid the money for the potentially life-saving medical treatment upon the condition that, if the insurance company was later found not liable for the costs of the HDC–ABMT treatment, the participant/beneficiary would be obligated to reimburse the insurance company.