David J. **ARBER**, Sr. and Carol A. Arber and Omni Finishing Systems, Inc.

v.

**EQUITABLE BENEFICIAL LIFE INSURANCE COMPANY.**

Civ. A. No. 93–CV–6458.

United States District Court, E.D. Pennsylvania.

April 4, 1994.

---

Frederick C. Horn, F. Craig La Rocca, Pearlstine/Salkin Associates P.A., Lansdale, PA, for plaintiffs.

Richard J. Sestak, Kittredge, Donley, Elson, Fullem & Embick, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendant, Equitable Beneficial Life Insurance Company has filed a motion to dismiss the Plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. That motion will be granted in part for the reasons set forth below.

## I. STATEMENT OF RELEVANT FACTS

This case, which was instituted under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, originated on or about May 7, 1993 when the defendant insurer denied a claim for medical benefits submitted by plaintiff Carol A. Arber and rescinded in its entirety the policy of group medical insurance which it had issued to the plaintiff employer, Omni Finishing Systems.

According to the allegations set forth in the Plaintiff's complaint, in the Spring of 1992, Omni Finishing Systems contacted Carpitella and Cassel Associates, a corporation which is engaged in the business of selling group insurance benefits, for the purpose of obtaining group medical insurance for its employees. Carpitella Associates, acting as the Defendant's authorized agent, recommended that Omni obtain group insurance from the Equitable Beneficial Life Insurance Company and in furtherance of that advice, accepted a Group Enrollment Form from Mr. and Mrs. Arber on Equitable's behalf. That form, among other things, requested information on the health and physical condition of the applicant employee and any covered dependents and included a release/authorization permitting the company to obtain information about the applicants from any hospital, doctor, licensed medical practitioner, clinic, etc. for use by the defendant company in determining eligibility for insurance benefits.

From all appearances, David and Carol Arber completed the application and signed the authorization on June 15, 1992, indicating thereon that David Arber suffered from hypertension which was stabilized by certain medications, and that in March, 1992, Carol Arber had suffered a back sprain from which she had completely recovered. Both Mr. and Mrs. Arber indicated that their attending physician was Dr. Paul Ravetz of Warminster, Pennsylvania and, in August, 1992, Equitable requested and received the Plaintiffs' medical records from Dr. Ravetz. Thereafter, effective July 1, 1992, Equitable by and through Carpitella Associates, issued a Certification of Group Insurance to the Plaintiffs reflecting policy No. 7544 00312 000.

On November 30, 1992, Carol Arber was advised by one Jerome Cutler, M.D. that surgery on her back was advisable to relieve what was apparently a chronic lower back pain condition. At or around that same time, Mrs. Arber sought and received pre-certification from the defendant company that her surgical and medical expenses relative to the recommended surgery would be covered under Equitable's plan with her husband's employer, Omni Finishing. In reliance upon the pre-certification of coverage, Carol Arber underwent surgery at Thomas Jefferson University Hospital in February, 1993 at a total cost of $21,543.41. Nevertheless, in response to the Arbers' submission of the back surgery bills to it for payment, Defendant, on May 7, 1993, denied the claim and rescinded the medical insurance coverage for the entire Omni Finishing Systems, Inc. group reciting as its reason therefor "the written submission of false information which materially affected the acceptance of the risk by the Company."

Although Plaintiffs endeavored to appeal Equitable's denial of their claim, the Defendant did not respond and this lawsuit was filed on December 6, 1993.

## II. DISCUSSION

### A. Legal Principles Governing Rule 12(b)(6) Motions to Dismiss

By way of the now-pending motion, Defendant argues that Plaintiffs' complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted. In evaluating the merits of such an argument, we look first to the requirements for pleading cases in the district courts prescribed by Fed.R.Civ.P. 8(a). That rule states:

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Subsections (e) and (f) of Rule 8 further provide, in relevant part:

**(e) Pleading to be Concise and Direct; Consistency.**

(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required.

. . .

**(f) Construction of Pleadings.**

All pleadings shall be so construed as to do substantial justice.

Thus, it has repeatedly been recognized that under the preceding flexible pleading requirements, a complaint must provide a defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Williams v. New Castle County*, 970 F.2d 1260, 1265–1266 (3rd Cir.1992) citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). In ruling upon a motion to dismiss for failure to state a claim upon which relief may be granted, the courts must primarily consider the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990). In considering such a motion, the court must accept as true all allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3rd Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988).

### B. Defendant's Motion to Dismiss Plaintiffs' ERISA Claims

Preliminarily, it should be noted that Defendant advances four arguments in support

of its contention that Plaintiffs' ERISA claims set forth in Counts I, III and IV of the complaint and that the claims of the plaintiff employer, Omni, should now be dismissed. In the interests of clarity, each of these arguments is addressed *seriatim*, in the paragraphs which follow.

1. *Legal Sufficiency of Count I to State a Claim under 29 U.S.C. § 1132(a)(1)(B)*

Defendant first challenges Count I of Plaintiffs' complaint by asserting that its failure to aver that the denial of the Arbers' claim was arbitrary and capricious renders it fatally defective. We agree.

As delineated in § 2 of ERISA, 29 U.S.C. § 1001(b), it was Congress' intent to, among other things,

"... protect interstate commerce and the interest of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal Courts."

■ As a result, ERISA comprehensively regulates employee welfare benefit plans that, through the purchase of insurance or otherwise, provide medical, surgical or hospital care, or benefits in the event of sickness, accident, disability or death. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987); *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1136 (7th Cir.1992). Under 29 U.S.C. § 1132(a)(1),

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

■ Although the Act itself is silent as to the appropriate standard of review for actions brought under § 1132(a)(1)(B), the United States Supreme Court, guided by principles of trust law, resolved the issue once and for all in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In ascertaining the entitlement of a group of former Firestone employees to severance benefits and damages, and whether the company's denial of those benefits was proper under § 1132, the Supreme Court looked to the Restatement (Second) of Trusts § 187 (1959) and noted that trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. 489 U.S. at 111, 109 S.Ct. at 954. The court then went on to lay down the standard of review to be applied in determining the validity of a claim to benefits under an ERISA plan:

"Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan ... Thus, for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion."

*Id.*, 489 U.S. at 115, 109 S.Ct. at 956–957. Accordingly, benefit determinations will be reviewed *de novo* unless the trustees of a plan have discretionary authority to determine eligibility; in such cases, the arbitrary and capricious standard of review is properly utilized and a decision to deny benefits under a plan covered by ERISA will be overturned when (1) arbitrary and capricious, (2) not supported by substantial evidence, or (3) erroneous on a question of law. *Anderson v. Operative Plasterers & Cement Masons, Int'l Ass'n Local No. 12*, 991 F.2d 356, 358 (7th Cir.1993); *Brown v. Retirement Committee*

of *Briggs & Stratton Retirement Plan,* 797 F.2d 521, 525 (7th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1311, 94 L.Ed.2d 165 (1987).

Moreover, the courts have further recognized that there are obviously no magic words required to trigger the application of one or another standard of judicial review. Rather, it need only appear on the face of the plan documents that the fiduciary has been given the power to construe disputed or doubtful terms or to resolve disputes over benefits eligibility. *Block v. Pitney Bowes, Inc.,* 952 F.2d 1450, 1453–54 (D.C.Cir.1992) quoting *De Nobel v. Vitro Corp.,* 885 F.2d 1180, 1187 (4th Cir.1989). This flexibility notwithstanding, one thing is certain. In any action challenging a decision to deny ERISA plan benefits, the plaintiff must plead and prove either (1) that the plan fiduciaries lacked discretion under the plan to determine eligibility for benefits or to construe the plan's terms or, (2) that the decision [to deny benefits] was arbitrary and capricious, unsupported by substantial evidence or founded on an erroneous interpretation of law. *Albert Einstein Medical Center v. National Benefit Fund for Hospital & Health Care Employees,* 740 F.Supp. 343, 352 (E.D.Pa. 1989); *Armbruster v. Benefit Trust Life Insurance Co.,* 687 F.Supp. 403, 406 (N.D.Ill. 1988).

Applying the foregoing standards to the matter now before the Court, we are somewhat hamstrung in our efforts to determine which standard of review should be applied in this case by virtue of the fact that neither party has provided the Court with a copy of the disputed benefits plan. Nevertheless, after carefully reviewing the Plaintiffs' complaint, we find that at paragraph 15, the Plaintiffs aver that: .

"Defendant, Equitable, is a 'named fiduciary' of the Omni Welfare Plan within the meaning of Section 3(21)(A) and 402(a) of ERISA (29 U.S.C. § 1002(21), 1102(a)), having discretionary control in the administration of the Omni Welfare Plan including, but not limited to, the discretion to accept or reject claims for benefits. In consideration of the payment of premiums, Defendant, Equitable, agreed to serve as 'named fiduciary' and to provide the funding necessary to provide the benefits of the Omni Welfare Plan."

Thus, although this Court can surmise from the language of both the preceding paragraph and paragraph 33 (that the defendant insurer "wrongfully failed to pay" Carol Arber's medical expenses) that the arbitrary and capricious standard of review should be utilized, we are unable to tell whether Plaintiffs' theory is such that the decision to deny the claim was itself arbitrary and capricious, or whether it was unsupported by substantial evidence or premised upon an erroneous interpretation of the law. Inasmuch as such allegations are clearly necessary to properly state a claim under § 1132(a)(1)(B) and to put the Defendant on notice of the allegedly improper conduct with which it is charged, we conclude that Count I of the complaint is best dismissed with leave to the Plaintiffs to file an amended pleading correcting this deficiency. For this reason, that part of Defendant's motion to dismiss Count I of the complaint will be granted.

2. *Sufficiency of Count III to State a Claim Under 29 U.S.C. § 1132(a)(3)*

Defendant next contends that Count III of the Plaintiffs' complaint must be dismissed since Equitable is not a "named fiduciary" of the Omni Welfare Plan nor did it owe any fiduciary duty to Plaintiffs under ERISA. Our analysis of the merits of this argument begins, as it must, with an examination of the Act's relevant provisions.

As referenced above, Count III of the Complaint endeavors to state a cause of action against Equitable for breach of fiduciary duty under § 1132(a)(3). Specifically, that section states:

Under Section 1109(a) of the Act,[1]

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties im-

---

1. 29 U.S.C. §§ 1104–1106 set forth a comprehensive listing of the responsibilities, obligations and duties imposed upon fiduciaries under ERISA.

posed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary . . .

A person is a "fiduciary," in turn, under 29 U.S.C. § 1002(21)(A), "with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

Finally, under § 1102(a),

(1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.

(2) For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

As the foregoing provisions make clear, the fiduciary duty standards imposed by ERISA are enforceable in civil damage actions only against parties who are fiduciaries under the ERISA statute. *Thornton v. Evans*, 692 F.2d 1064, 1077 (7th Cir.1982). Of course, not all parties who render services or who offer and sell products to a plan are "fiduciaries" within the meaning of ERISA's definition, nor does the mere fact that someone is a fiduciary under a plan necessarily

mean that he or she is a fiduciary with respect to all fiduciary obligations under the plan. *Fechter v. Connecticut General Life Insurance Co.*, 800 F.Supp. 182, 197 (E.D.Pa. 1992).

Rather, a person is a fiduciary for purposes of ERISA only to the extent that he or she exercises discretion over the management of plan assets, renders investment advice for a fee or exercises discretionary control over the administration of a plan. Accordingly, in determining who is a fiduciary under ERISA [and whether a claim for breach of fiduciary duty has been stated thereunder], the courts must consider the extent to which a party possessed or exercised decision making control or authority with respect to the wrongs alleged by plaintiffs. *Thornton v. Evans, supra*, at 1077; *Fechter v. Connecticut General*, 800 F.Supp. at 197; *Weir v. Northwestern National Life Insurance Company*, 796 F.Supp. 846, 848 (E.D.Pa.1992).

Reviewing Count III of the complaint in light of the preceding principles, we find that in paragraphs 15, 40 and 41 of the challenged pleading, it is alleged that ". . . Equitable is a named fiduciary of the Omni Welfare Plan . . . having discretionary control in the administration of the Omni Welfare Plan including, but not limited to, the discretion to accept or reject claims for benefits," that "[i]n consideration of the payment of premiums, defendant Equitable agreed to serve as named fiduciary and to provide the funding necessary to provide the benefits of the Omni Welfare Plan," and that "Equitable . . . is thereby subject to the fiduciary duties imposed by it under the terms of ERISA." Clearly these averments, particularly when viewed in the light most favorable to the Plaintiffs, are sufficient to state a claim for which relief may be granted for breach of fiduciary duty.

However, as referenced above, Count III of the complaint endeavors to state a cause of action against Equitable for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), which states that:

"A civil action may be brought—

(3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

Notwithstanding that § 1132(a)(3) authorizes the commencement of civil actions for *equitable* relief, Count III of the Plaintiffs' complaint seeks *legal* relief in the form of an award of money damages, interest, costs and counsel fees. Insofar as such legal claims are properly pleaded and raised under § 1132(a)(2), Count III of the complaint will likewise be dismissed and Plaintiffs will be given leave to file an amended pleading properly aligning their cause of action with the appropriate statute. *See: Simmons v. Southern Bell Telephone & Telegraph Co.,* 940 F.2d 614, 617 (11th Cir.1991); *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1162, n. 7 (3rd Cir.1990); *McMahon v. McDowell,* 794 F.2d 100, 109 (3rd Cir.1986), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986), citing *Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985). Thus, the Defendant's motion to dismiss Count III will also be granted.

3. *Sufficiency of Count VI of Plaintiff's Complaint to State a Claim under 29 U.S.C. § 1024*

Defendant further moves to dismiss Count VI of Plaintiffs' complaint alleging as the reason therefor the complaint's failure to allege that it was the "administrator" of the Omni Welfare Plan. Once again, after careful review, we are constrained to agree with the Defendant.

From all appearances, Count VI seeks to invoke the provisions of 29 U.S.C. § 1024(b)(4) which states, in relevant part:

"Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:

(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated ..."

"Administrator" is defined in § 1002(16)(A) as meaning:

"(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe."

Section 1002(16)(B) goes on to explain that

"The term 'plan sponsor' means (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers and one or more employee organizations, the association, committee, joint board of trustees or other similar group of representatives of the parties who establish or maintain the plan."

It is therefore obvious that, as a general rule, the employer is deemed to be the plan sponsor in those cases where an employee welfare benefit plan is established or maintained by a single employer and that a plan sponsor is an administrator if another administrator is not designated under the plan. *Coleman v. Nationwide Life Insurance Co.,* 969 F.2d 54, 62 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993); *Swint v. Protective Life Insurance Co.,* 779 F.Supp. 532, 550 (S.D.Ala. 1991); *Vogel v. Independence Federal Savings Bank,* 728 F.Supp. 1210, 1226 (D.Md. 1990); *Thonen v. McNeil–Akron, Inc.,* 661 F.Supp. 1252, 1265 (N.D.Ohio 1986).

In this case and as the Plaintiffs themselves acknowledge in their brief in op-

position to the instant motion, the complaint is completely silent as to the issue of who is the "administrator" of the benefit plan at issue and we again note that neither party has provided the Court with a copy of the said plan. Accordingly, it is impossible to make a determination one way or the other as to the identity of the plan's administrator and we therefore have no alternative but to dismiss Count VI for failure to state a claim against Equitable. In the event that Equitable Beneficial is, in fact, designated as the administrator in the plan, however, Plaintiffs shall again be granted permission to file an amended complaint to so reflect this status.

4. *Omni Finishing Systems, Inc.'s Standing to Sue Under ERISA*

Defendant next challenges Omni's standing to maintain this action on the ground that an employer is not within the class of parties permitted standing to sue under § 1132(a).

To be sure, § 1132(a) outlines the class of parties permitted to commence civil actions under the Act by virtue of the following language:

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;

(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or

(6) by the Secretary to collect any civil penalty under subsection (c)(2) or (i) or (1) of this section.

Section 1132(a) then, clearly restricts the categories of individuals empowered to bring a civil action to four groups of persons none of which, without more, includes employers. *Eureka Paper Box Co. v. WBMA, Inc., Voluntary Employee Benefit Trust*, 767 F.Supp. 642, 649–650 (M.D.Pa.1991) citing *Crown Cork & Seal Co. v. Teamsters Pension Fund*, 549 F.Supp. 307 (E.D.Pa.1983), aff'd, 720 F.2d 661 (3rd Cir.1983) and see also: *Grand Union Co. v. Food Employers Labor Relations Assoc.*, 808 F.2d 66 (D.C.Cir.1987); *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889, 892 (2nd Cir.1983), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).

That is not to say, however, that employers never have the ability to bring an ERISA action and thus if they also serve as fiduciaries, they have standing to sue in that capacity. *Id.*, at 650. *See Also: Kendal Corp. v. Inter–County Hospitalization Plan, Inc.*, 771 F.Supp. 681, 684 (E.D.Pa.1991).

To reiterate, "fiduciary" status is determined under 29 U.S.C. § 1002(21)(A) and will be found when a person is vested with discretionary authority or control with respect to a plan's management, assets distribution or administration or renders investment advice. Here, the Plaintiffs' complaint nowhere contains any averment or allegation which could lead this Court to the conclusion that Omni, as the husband-plaintiff's employer, was a fiduciary within the meaning of the statute. We therefore can find no basis, and Omni itself appears to concede that there is no foundation, upon which standing could be said to have been conferred on it to maintain an ERISA action on its own behalf. However, as is discussed *infra*, we find that Omni does have standing to maintain an action for breach of contract.

### C. *Preemption of Plaintiffs' State Law Claims*

Finally, Defendant argues that Counts II, IV and V of Plaintiffs' complaint must be dismissed because they raise claims under state law which have effectively been preempted by the federal Act. Insofar as the Plaintiffs concede in their brief in opposition to this motion that ERISA preempts the breach of contract claim which Mr. and Mrs. Arber have asserted in Count V, that count will be dismissed with prejudice. We turn now to Counts II and IV which assert causes of action for estoppel and breach of contract on behalf of the Arbers and Omni Finishing respectively.

 In deciding whether a federal law preempts a state statute, it is the court's task to ascertain Congress' intent in enacting the federal statute at issue. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). Preemption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. *Id.,* quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). In this regard, it has been recognized that Congress passed ERISA in order to assure that those who participate in employee benefit plans actually receive the benefits they are entitled to and do not lose their benefits as a result of unduly restrictive provisions. *Vanderklok v. Provident Life and Accident Insurance Co.,* 956 F.2d 610, 614 (6th Cir.1992) quoting H.R.Rep. No. 93–807, 93rd Cong., 2d Sess. 3, reprinted in 1974 U.S.Code Cong. & Admin. News 4639, 4670, 4676–77.

Specifically, 29 U.S.C. § 1144(a) states the following with regard to preemption:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975."

29 U.S.C. § 1144(c) further defines "State law" and "State" via the following language:

(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

(2) The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

 It has been said that this preemption clause is conspicuous for its breadth in that it established as an area of exclusive federal concern the subject of every state law that "relates to" an employee benefit plan governed by ERISA. *FMC Corp. v. Holliday,* 498 U.S. 52, 56–57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). A law "relates to" an employee benefit plan, in the normal sense of the phrase, it if has a connection with or reference to such a plan. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990), citing *Shaw v. Delta Air Lines, Inc., supra,* 463 U.S. at 96–97, 103 S.Ct. at 2900. Under this broad, common sense meaning, a state law may relate to a benefit plan and thereby be preempted even if the law is not specifically designed to affect such plans or the effect is only indirect. *Id.,* citing *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987).

 Interestingly, while it was clearly Congress' intent in enacting ERISA to make pension plan regulation an exclusively federal concern and to thereby preempt most state law claims, the Circuits appear divided on the question of whether ERISA will preempt state law claims based on wrongs for which no remedy is available under ERISA, with the Third Circuit yet to issue a definitive ruling thereon. *See: International Resources, Inc. v. New York Life Insurance Co.,* 950 F.2d 294, 298 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992); *Weir v. Northwestern*

*National Life Insurance Co.,* 796 F.Supp. 846, 849 (E.D.Pa.1992) citing *Lister v. Stark,* 890 F.2d 941, 946 (7th Cir.1989), *cert. denied,* 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990) and *Lee v. E.I. Du Pont de Nemours & Co.,* 894 F.2d 755, 757 (5th Cir.1990). This fact notwithstanding, it is, however, now well-settled law that federal courts are empowered to create a federal common law of pension plans under ERISA in order to effectuate Congress' intent to preempt the area and create a comprehensive federal regulatory scheme. *Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund,* 847 F.2d 113, 121 (3rd Cir.1988), *cert. denied,* 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989), citing, *inter alia, In Re White Farm Equipment Co.,* 788 F.2d 1186, 1191 (6th Cir.1986); *Murphy v. Heppenstall Co.,* 635 F.2d 233, 237 (3rd Cir.1980), *cert. denied,* 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982). In this regard, it has been noted that in cases arising under the federal common law of ERISA, the district courts are effectively vested with federal question jurisdiction under 28 U.S.C. § 1331. *See: Northeast Department ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 158 (3rd Cir.1985).

██ Applying all of the foregoing to the remaining counts of the complaint at issue in this case, we naturally agree with the Defendant's contention that state law contract and tort claims are preempted by ERISA under the holdings of the U.S. Supreme Court in both the *Pilot Life, supra* and *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) cases. Nevertheless, several courts have recognized that a federal common law cause of action may exist under the theory of equitable estoppel provided that the plaintiff can plead and prove that:

(1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to [be] estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know nor should it have known the true facts; and

(5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

*Swint v. Protective Life Insurance Co.,* 779 F.Supp. 532, 559 (S.D.Ala.1991) quoting *National Companies Health Benefit Plan v. St. Joseph's Hospital, Inc.,* 929 F.2d 1558, 1572 (11th Cir.1991). *See Also: Gridley v. Cleveland Pneumatic Co.,* 924 F.2d 1310, 1319 (3rd Cir.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991).

██ Similarly, in light of Congress' clear purpose and intent to bring welfare benefit plans under the exclusive umbrella of federal law and to ensure that those who are entitled to receive benefits under such plans do not lose them due to unreasonably prohibitive provisions, we believe that an employer is implicitly empowered under the federal common law governing ERISA to bring a breach of contract action on behalf of itself or its employees against an insurer for denial of those benefits and/or a cancellation of a plan/policy providing for such benefits. Indeed, the Supreme Court has held that a party has standing to sue under a federal statute so long as his aggrieved injury falls arguably within the zone of interests protected by the statute allegedly violated and as long as the statute itself does not preclude the suit. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 154–155, 90 S.Ct. 827, 831, 25 L.Ed.2d 184 (1970); *Fentron Industries v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982); *Northeast Department ILGWU v. Teamsters, supra.* Moreover, we further note that under that section of ERISA governing multi-employer pension plans, employers are among the class expressly granted standing to pursue an action for appropriate legal and/or equitable relief to enforce the provisions of the portion of the Act. *See:* 29 U.S.C. § 1451(a). So saying, we conclude that to the extent that an employer substantially avers the existence of a contract, including its essential terms, a breach thereof and resultant damages, it has adequately stated a claim under the federal common law of ERISA for breach of con-

tract.[2] *See, e.g.: General State Authority v. Coleman Cable & Wire Co.*, 27 Pa.Cmwlth. 385, 365 A.2d 1347 (1976).

In reviewing the two remaining counts of the complaint for purposes of determining whether or not they are adequate to state claims under the federal common law of ERISA for estoppel and breach of contract, we find that they are sufficient (albeit barely) to outline the terms of the contract which Defendant is charged with breaching and the alleged misrepresentations concerning the payment of Carol Arber's surgical and medical expenses upon which Mr. and Mrs. Arber purportedly relied. Consequently, these counts will be left standing.

An order follows.

### ORDER

AND NOW, this 4th day of April, 1994, upon consideration of the Defendant's Motion to Dismiss the Plaintiffs' Complaint, it is hereby ORDERED that the motion is GRANTED IN PART and DENIED IN PART, and Counts I, III, and VI of Plaintiffs' Complaint are DISMISSED with leave to Plaintiffs to file an Amended Complaint correcting the deficiencies noted in the preceding Memorandum within thirty (30) days of the entry date of this Order. Count V is DISMISSED with prejudice.

---

**2.** It is clear that when a federal court deems it appropriate to create federal common law, it may look to and use state common law as the basis for the federal law, provided that the state law does not contravene the policies underlying the federal statute in question. *See, e.g.: Nachwalter v. Christie*, 805 F.2d 956, 959–960 (11th Cir.1986).